Good morning. Welcome to the Fourth Circuit. Judge Harris and I would particularly like to welcome Judge Lee. We know your time is valuable and we appreciate your service to the court. We're ready now to hear argument in our first case, Adams Housing v. City of Salisbury. Ms. Shear, whenever you're ready. Thank you, Your Honor. May it please the court, I'm here representing the City of Salisbury in this case in which the city's occupancy ordinance is at issue. And the occupancy ordinance provides that no more than two unrelated individuals can constitute a family in the zoning district at issue, which is R10. So what we have is a district court ruling by Judge Motz that the occupancy ordinance was vague as applied to the tenants who were living in the property owned by Adams Housing. Was this a 12B6 motion or was it a summary judgment motion? It wasn't clear to me from the opinion whether the judge, what standard review the judge applied. Can you tell me? It was a motion to dismiss under 12B6. It was not a motion for summary judgment in the alternative. So the non-moving party wanted a 12B6 motion and substantive relief was granted on a 12B6 motion with no discovery? No, what happened is I filed a motion to dismiss the complaint on the basis that the factual allegations were not plausible under Iqbal v. Twombly, and that the occupancy ordinance on its face and as applied was constitutional. And the court agreed with me that the ordinance passed the rational basis test. But if I back up a little bit, before the court held that, it instituted a telephone call between the parties. And during the telephone call, the judge asked if the city would be interested in settling the case. And he said, if you do not settle, I'm going to rule against you in some way. And so I told him that I would consult with my client. And he instructed me to send him a letter letting him know what we intended. And so during that phone call, he asked me something about, are the facts disputed? And I said, well, we dispute the facts that are alleged in the complaint. We're just moving to dismiss based on, you know, if you accept all the allegations of the complaint as true, are we entitled to dismissal? If not, then the case proceeds forward. You deny our motion. That was the only issue. You sent him a letter telling him that you wanted to have discovery if he denied the motion, correct? Yes, Your Honor. My letter is in the joint appendix at page 240. And I wrote, as instructed by the court, I have consulted with my client regarding potential settlement. The city has indicated that it is not interested in a settlement. If, as the court indicated, it is inclined to deny the city's motion to dismiss, then the city respectfully submits that the court permit the case to move forward to discovery. Okay. And so that was the status following this telephone conference. And then Judge Moss proceeded to rule on the motion to dismiss. And instead of denying the motion, he ruled on the legal issues. Were you given a chance to brief the constitutionality of the statute? Yes, Your Honor. Okay. Can I ask you a procedural question about the relief that was granted? Because I'm trying to figure out. So he grants declaratory judgment that the ordinance is vague in application to these kind of mixed situations. And does that mean that the ordinance cannot be enforced going forward against any landlords who are renting to these mixed groups? Well, Your Honor, that's absolutely the concern of the city. But is there an answer? Like I don't understand the relief that was granted. Is it that this ordinance may no longer be enforced going forward against these mixed groups, or is it just that the 2014 order is void? Do you know what he did? What he did is he declared, it's my understanding that he declared that the statute was vague as applied to two brothers and a friend living together. But not as applied to two sisters and a friend? His interpretation of the statute was that if you have ---- I understand his interpretation of the statute. I'm just trying to figure out from the city's perspective, may you enforce this ordinance tomorrow against a different mixed group? No, because what he held is that the statute allows mixing of the groups. He said that the way he interpreted the statute was that the three groups that can constitute a family are not alternatives, that they're not mutually exclusive, and the city's position is that they are. Just for mootness purposes, it's helpful for me to focus on exactly what the relief granted was. And your understanding, which is the same as mine, is that he is enjoining the enforcement going forward of a city ordinance. Yes, Your Honor. And so just to talk about the statute, our position is that the statute is unambiguous and that ---- How is it unambiguous? Because it states that the definition of family shall be one of the three following groups. And then the first group is two unrelated ---- no more than two unrelated. And then the second group is ---- So where's the two? There's one unrelated person. You could read it that there's one unrelated person in this group of two brothers and the one unrelated person. Only if you allow the mixing. Because what happens is these three people that were the tenants are not related because of the presence of the friend. They're also not unrelated. I'm sorry. They're not unrelated because ---- You're even confused. No, I'm not. Because it is confusing to try to explain that statute. It's hard to ---- You would have to concede it's somewhat ambiguous at least. No, it's not. It's not ambiguous at all. And I'm sorry if I misstated. Under 1A allows two or more related persons. You didn't have that with these tenants because of the presence of the third unrelated person. You cannot mix those groups. Under 1B, it allows a maximum of two persons, quote, who are not so related, end quote, because of the ---- You can never have an unrelated person. No. The purpose of the statute is to limit it to two, no more than two related persons. Related or unrelated? More than two related, right? This is like who's on first. This is a confusing statute. No, it's not, Your Honor. I stated it, I thought, very clearly, that 1A allows two or more related persons. And you don't have that because of the presence of the third person who's unrelated. Under 1B, it's a maximum of two persons who are not so related. And you don't have that because of the presence of the two brothers who are related. So do you count the two brothers twice? They are related. Are they one person if it's two related? No, the ---- If you ---- Under 1B, it's a maximum of two persons who are not so related. The two brothers are related, so they don't fit in that category. You cannot mix the categories to have related and unrelated people living in the same house. And for the proposition that it is clear that you can't mix them, you're relying on the language, one of the following groups, right, in the introduction? Correct. Okay. Right, and the use of ---- So the whole argument turns on for one of the following groups. That's what addresses the mixing in your mind? Exactly, plus the use of colon and semicolons to show that they're three separate groups. The third group is a functional family under 1C, but Adams Housing did not apply for its tenants to be considered a functional family. And so what's going to happen moving forward based on Judge Motza's decision is that the landlords in the city are now going to be able to exceed the limit of two related persons, and it could be more than three people. It could be, you know, 12 people living in the same house. Can I ask you a question? I understand your position that the language of the statute is clear, but are you also relying? I mean, it does seem to me that even if it wasn't clear then, it's clear now. There's been an enforcement action. It's been approved by the board. Is there a landlord in town who doesn't know today that you can't do this mixing? No. They knew it from newspaper articles, from explanations issued by the city. They knew it before this, but they definitely know it now. I mean, for vagueness purposes, right, you can clarify the meaning of the statute through enforcement actions, right? I would think so, Your Honor. And if you look at the order to reduce occupancy, the enforcement officer who issued that specifically wrote, you know, that this was exceeding the statute because there's no mixing of related and unrelated people allowed. And so the city was not unclear with this interpretation. And then Judge Motz multiplied his errors by going ahead and accepting as true the allegations of the complaint, not to deny or motion to dismiss, but to go ahead and grant affirmative relief to Adams Housing. And Judge Motz went ahead and agreed that there was discriminatory enforcement, even though that was an unsupported allegation of the complaint. And there was absolutely no proof of that. And that's not the way that the procedural rules are supposed to work, first of all. And secondly, I mean, absolutely you can't just accept the allegations of a complaint as proven fact in order to grant relief to a party that hasn't even filed a motion. And so multiple errors are addressed in our brief based on the interpretation of the statute, the holding that is vague as applied, and then the fact that the court, instead of denying our motion to dismiss, went ahead and granted affirmative relief to a party that had not moved for any relief. And so in essence, the court created a fourth group that doesn't exist in the statute, told us that we should have had a redundant provision that prohibited mixing, and then said, Adams Housing, you're right, the city's done all these horrible things, and therefore I grant you relief, and here's your declaratory judgment. And that's absolutely not the way that the procedural rules are supposed to work. And it denied the city its substantive rights in this case. I mean, we should have had the right, if our motion was going to be denied in some respect, to go forward to discovery, to present the court then with a motion for summary judgment following discovery that gave the legislative history of the statute and how it had been applied to show there was no discriminatory enforcement. We had a right to prove that the allegations in the complaint that he just accepted were wrong, that they were not true. And he deprived us of that right. Do you think discovery would have changed anything if you had discovery concerning inconsistent enforcement? Have there been multiple enforcement of this statute yet? Absolutely, because it's clear in his memorandum opinion that he relied upon those things in order to come to his decision. Well, actually, he had the housing board transcript that referred to the Adams claim that there were others in the community with nonconforming uses, but there's no way to know if they had permits or whether a grandfather or not is there? Oh, there wasn't. Are you referring to the administrative record of their appeal? Yes. Right. I think that that was presented as background information, but it didn't prove anything. It was like a transcript of arguments that were made. So you need discovery in order to figure out just — Sure. I mean, yeah, we had a right to prove what the legislative history of the statute was for starters, and then to show that those allegations of discriminatory enforcement and inconsistent decisions, and I think there was an allegation of retaliatory inspections. We had the right to discovery and to prove that all those allegations were false, and Judge Moss, he just accepted those as true in making his decision in this case. And you're supposed to accept the allegations of the complaint as true for purposes of evaluating a motion to dismiss, but not for purposes of transforming it into cross motions for summary judgment, which is what he did, but without discovery. So in every respect, we assert that the decision was wrong legally, as a matter of statutory construction and constitutional law, and then also procedurally with respect to how he proceeded. So I think Your Honors had asked for a supplemental briefing regarding jurisdiction, and if you'd like, I'd address that briefly. Yes. Like I said, the city feels as if it cannot move forward with enforcement now, and that the landlords around the university are now going to try to rent to many more than two students, and that the city will be handcuffed, basically, in its ability to enforce its limit of two related persons to constitute a family under 1A of the statute. And so that definitely, I think, brings it before you as something that's not moot. And secondly, you know, the city is not aware of what Adams Housing is doing or how many, you know, tenants it might have in one house at this point. You know, basically the city goes by when it gets tips, which is what happened in this case. It got a tip that there were too many people living there. And so, you know, I think it was incumbent upon Adams Housing in their supplemental brief. I'm sorry to interrupt you, but your red light's on, and you can follow up on the mootness issue in your rebuttal time. Thank you. All right, Mr. Rommel. Good morning, Your Honor, and good morning, Your Honors. May it please the Court. It's Luke Rommel on behalf of Adams Housing, LLC. The Adams, Chris and Kevin Adams, are incidentally seated behind me in the courtroom today. I'd like to address the mootness issue at first, if that would be appropriate with the Court. Please do. And in doing so, I had an opportunity to review the Court's order in which it referenced the first Roe v. Wade decision. Can I ask you a question? Before we even get to sort of possible exceptions to the mootness doctrine, is your understanding of the relief in this case the same as that of your colleague, which is that this is a declaratory judgment which now prohibits the city going forward from applying its ordinance to any landlord renting in this kind of mixed situation, some people who are related, some people who are unrelated, that this effectively enjoins an ongoing city policy? I think the key word that Your Honor mentioned is effectively. I think that would be the applied impact of the Court's ruling. Well, then that's not moot, right? Like that can't possibly be moot. Right. And I would tend to agree with Your Honor that the impact of that ruling would necessarily affect similar situated landlords, both the Adams and others. If Your Honor is persuaded that that disposes of the mootness issue, I'll move on. But I was prepared to address, in light of the Court's order, which obviously presented concerns to me, I wanted to focus on the two-prong test that's set forth in the Weinstein v. Bradford case and, incidentally, by analogy, the Roe v. Wade case, which I think is, albeit obviously metaphorically relevant, nonetheless it fits fairly nicely here. So, number one, this case, like Roe v. Wade, deals with a scenario that's very finite in its gestation, as they say in Roe v. Wade. In this case, you have a one-year lease. So we proffered that it's foreseeable, both in Salisbury and with the Adams specifically, that almost any dispute whatsoever is going to have a very difficult time surviving a litigation process such as this. It's going to be the natural expiration of a lease, given the nature of the lease itself and given the nature of the Salisbury community, in which you have a very high rental population, you have a sizable student population, and you have the industry in general, which tends to keep leases shorter as opposed to longer for residential purposes. So I think that would satisfy the first part of the Weinstein test, saying that it's fair to conclude, both as a matter of fact and as a matter of law, that this type of case would not survive the ordinary appellate process. As it relates to the recurrence of the activity, Adams Housing is in the rental business, and one of your models is to rent to college students. So it's likely to recur. In fact, you had to return a security deposit to somebody, didn't you? Right, Your Honor, and I think that we set forth that initially in our complaint, that as a matter of fact, this happened one time subsequently. So we cited that both in our supplemental brief, and I believe it's set forth in the very tail end of the complaint fax as well, where the Adams were required to terminate a second lease as a result of the city's ruling in the lease that's at issue in the court's record. So as a matter of fact, it has occurred. As a matter of theory, it's certainly fair to conclude that it's likely to occur. Have you said what you wanted to say about mootness now? I think so, Your Honor. Can we just go to a question I have? I'm trying to figure out how you got a further relief as the non-moving party on the 12B6 motion. If you could answer that question first, and then answer whether or not you think discovery is necessary, that would help me. Yes, Your Honor. I believe that what's set forth on page 241 of the joint appendix, where the district court writes a footnote describing the procedural history of that phone call, is in fact accurate. But the footnote says that the city wanted discovery, didn't it? After the card had been played, so to speak, that the ruling would be likely to be unfavorable against the city, at that point discovery became desirable for the city. We would prefer that prior to that point discovery was not desired by the city because it went for the proverbial jugular in moving to dismiss. So while slightly outside the scope of the record, I believe that you can read between the lines of this footnote, and I'd represent to the court that Judge Miles asked the parties whether, for purposes of this motion, any facts were in dispute. At that point the parties agreed that there were no relevant facts in dispute for purposes of the 12B. So was that his notice to you that it was going to be a summary judging motion, that there are no facts in dispute? Because I thought it was a 12B6 motion. You took the allegations as true. Correct, Your Honor. And I think that Judge Motz revealed that, and I believe counsel can verify that in the rebuttal phase, but revealed the likely outcome of this proceeding by the termination of that phone call. So we had an idea as to what was going to happen. Which is likely why opposing counsel then wrote the letter that she did saying that if the motion to dismiss was denied, the city requested discovery. That's correct. I think that's a fair conclusion to reach. My rebuttal to that is that it's not necessary. And the parties agreed that there's fundamentally no dispute as to the composition of this house. You have two brothers and a friend, as we've described it in considerable detail throughout the record. You have a law-abiding living relationship between two brothers and a friend. There's no allegations to the contrary. I do feel like there is a very serious dispute, in fact, because the court, in granting this sort of vagueness challenge, had to get past the idea that the law is clear, that in a commercial context like this, we expect commercial entities to make inquiries if something is unclear. And the district court said, that doesn't apply here because of these inconsistent rulings. It would have been fruitless to ask questions because nobody knows how this thing applies. But in so his the reasoning in addressing the vagueness challenge was premised on the resolution of this factual dispute as to whether or not there had been inconsistent applications of the statute. And that is very much contested, right? Well, I don't know that you have to deduce that based on discovery. I think you can look at the statute itself, and I believe that that statute, and I believe that Judge Motz reaches this conclusion, and I believe that even this court is somewhat inclined to do the same. It's a hopelessly tortured statutory scheme. It's not the law says if the statute is unclear, commercial entities like landlords are supposed to make inquiries. Go to the board. Ask them. I'm thinking of renting to this mixed group. I don't know if I should. What do you say? And then the district court, responding to that well-established law, says it doesn't apply in this case because of these inconsistent enforcement actions. But what inconsistent enforcement actions? The city denies that there have been any. Right, but the city also agreed that the facts were undisputed at that stage in the proceedings. And I believe that both on its face and based on the facts that the city acknowledged very early on in this process, you can reach the conclusion that this statute as written is inherently vague as applied to Adams Housing in this case. Well, maybe, okay, and this goes to the question of relief. Maybe as applied to Adams Housing in 2014, but can we all agree that it is no longer vague, that the one thing that is clear given the enforcement action and then the order being upheld by the board, is that at least going forward it is no longer an open question whether you can rent to mixed groups? Should Judge Motz's opinion be affirmed? I believe at that point it would then be clear. Why isn't it clear now? Judge Motz, why isn't it clear right now based on the HBAA hearing in which they adopted that original order saying you may not mix groups? Because the HBAA has taken a confusing variety of positions on that same issue, which is reflected in the record, as alluded to by this court, and is also contained within the allegations of our complaint, that it's almost an ad hoc case-by-case decision-making process. It's not. The HBAA has come out and said this is the rule. If it's being unfairly enforced now, that's a separate problem. That's a selective enforcement problem. But it's not vague. I mean, anyone can look at the answer. It's a yes-no question. Can you mix the groups? The answer is no, you can't. According to the HBAA, but that's the HBAA's. Is there any record in town that's not bound by the HBAA? Forgive me for asking this rhetorically, but does the HBAA's interpretation of an inherently vague statute provide any notice to anybody when an HBAA is composed on a very ad hoc basis? So there's no one within the jurisdiction of Salisbury. I'm sorry, Your Honor. So you're saying landlords, if they have a question about what this statute means, it can't be answered by the HBAA? Who can it be answered by? Well, it certainly can't be answered by the statute itself, because it's such a ---- Right. But who can it be answered by? And therein lies the problem. It can be answered by the United States district court, and that's why the Adams ---- Why can't it be answered by the United States district court? It's a State law question. I thought the HBAA gets to answer it, and then I thought that maybe you were appealing the HBAA to a State court, but that's been stayed. Why would a Federal district court get to answer this question about what a local ordinance means? Well, because as all parties recognize, not only Adams housing, but the City of Salisbury that is presenting Federal constitutional issues, and that's set forth in the very first paragraph of the City of Salisbury's brief that was filed in this case. It was acknowledged, agreed, in fact, affirmatively established by the City of Salisbury that the City of Salisbury believed that constitutional issues that were appropriate for the jurisdiction of the Federal court were at play in this case. Adams housing presented those same issues in the same context, that these are issues that are constitutional in nature. These State court proceedings are not adequate. I understand the constitutional question. I've taken up too much of your time. Thank you, Your Honor. Well, go back to the actual ordinance itself. The ordinance has punctuation, and the City's view is that the colon and semicolon suggest three separate groups, not mixing the groups. How about that? Well, I read it differently, Your Honor, and I say that respectfully to the City. And I believe that just like any inherently vague statute, it can be read by one person one time. It can be read by one person a thousand times. And you're going to be no clearer on that thousandth time as you are on that first time as to what that statute prohibits or what that statute requires to be in compliance with that statute. And the colons and semicolons only exasperate that inherent vagueness, where it's sending you on a bit of a chase as to where to go in that statutory scheme that no objectively reasonable reader knows what it's telling you. It's almost impossible to read it from beginning to end. It's that tortured in its style. It's that tortured in its wording. And I believe that this Court can conclude on a paper tech of that statute that it's inherently vague. I don't know any alternative conclusion. I don't know that three people, whether it's this Court or elsewhere, could read that statute and reach the same conclusions. It's like an algorithm that leads to three separate equations. That in itself is grounds, I believe, for Judge Motz's ruling. As Judge Motz ruled, it's murky at best. And I don't know that anything's been argued by the City to get us any clearer than that by Judge Motz. It doesn't seem all that hard to me. I mean, it does say the family means one of the following groups living as a single housekeeping unit. A, two or more people who are related, or B, it doesn't say or, semicolon B, up to a maximum of two persons who are not so related. But why doesn't one of the following groups kind of answer this question about whether I mean, it doesn't say one or more of the following groups, some combination of the following groups. It says one of the following groups, and then it gives you A or B. It doesn't seem that hard to me to follow. Right. But the language that precedes that is no more than two unrelated persons. And we could look at that. Are there two brothers? Two brothers. One entity? Or are they two people? It seems to me there would be one, wouldn't it? Is it one nucleus with the two brothers? Right. Or do the two brothers get spread apart and create unrelated with the third party? That's what Judge Miles said was vague about it, right? Right. And I would submit to this Court that it's purely academic. There's no guidance in that regard. There's nothing that gets us any closer to the answer to that simple math problem. I feel that that is as true today as it was in 2014. That today you genuinely just have no idea whether this ordinance permits mixing or not, notwithstanding the fact that your clients have been served with an order that says, heads up, this does not permit mixing. You just seem like the best notified people in the history of vagueness challenges. Someone has come to you personally and said, you may have a question about the statute, but here's what it means. Right. And at that point, the Adams took that at the city's word and influenced their decisions moving forward with their very next lease under similar circumstances. Because now they're on notice. So they were on notice. However. Well, if they're on notice, how is this vague as applied to them? As set forth in their complaint, there had been a vastly inconsistent application of similarly situated landlords. Back in 2014. Predating this. Right. But what's happened now is this statute has been enjoined going forward on the ground that it doesn't give notice. But there is notice now. I'm putting it to one side. Notice of any degree of clarity when it's inconsistent with current rulings that are in place within the same boundaries. So are you referring to the fact that there are a lot of nonconforming uses in the community, but we don't know whether they have applied for or received exceptions at this point, and there's no record to let us know. There's no discovery done in the case, right? Right. And that's where it's critical to look at 241 in the joint appendix. And Judge Mott set forth in that footnote what he believed to be the procedural posture of this case. Judge Mott set forth that the parties agreed that the facts were undisputed. Adam's housing would proffer that the facts prior to Judge Mott's disclosing the likely outcome of his ruling were undisputed. And the record contains allegations as well as the underlying transcripts in which the allegations were dealt with at the HBAA. Those were just arguments made by Adam's family. There was no evidence concerning prior applications of this ordinance to any other landlord, were there? They had been presented at the HBAA hearing. Now, my question was whether there have been prior applications of this ordinance to other landlords under similar circumstances. We don't know that, do we? It's been alleged in the Adam's housing complaint, and there have been, if we're going to go slightly outside the scope of that. Those are reflected in the transcript of the HBAA hearing. Those transcript references were just allegations. There were no citations to particular enforcer proceedings and other landlords, were there? No specific citations set forth in the pleadings. However, the 241 footnote by Judge Mott's would have to be given weight that the parties did not dispute that component. All parts of it? At that particular time. All parts of that footnote. The footnote says that the city wanted discovery if you denied the motion. So am I to consider all the footnote or just part of it? Right, but the city did not want discovery until that motion was ruled upon. At that point, Judge Mott said, would the parties agree that there are no material facts in dispute? The motion was going to be denied as opposing counsel understood it. Are you saying that the parties understood after that phone call that not only was the motion to dismiss going to be denied, but something, I guess a motion for summary judgment that wasn't made, was going to be granted in your favor? I think the specific word that was used by Judge Mott's was ripe. And I believe that Judge Mott's indicated that it was ripe for a declaratory judgment ruling at that particular juncture. There was no dispute at that time until Judge Mott's suggested or leaned in the direction of the likely outcome, at which point the city then follows up with what we would believe would be, desperate is too strong of a word, but a chance to resuscitate what is the likely outcome by saying we now need discovery, although we did not need discovery prior to knowing the likely outcome of this case. And I think that's a fair conclusion that's memorialized by Judge Mott's on page 241 in the opinion in the footnote. May I ask just a quick question? It seems like a lot of your arguments come back to this idea that there's some selective enforcement going on. And as I understand it, Judge Mott's district court did not reach that issue because instead the court granted this vagueness relief on the vagueness claim. I mean, this case could go back right to the district court on the selective enforcement claim and there could be discovery and the district court could figure out whether in fact there has been selective enforcement. Your Honor, I would not argue that selective enforcement is material to the ruling on vagueness. I think my address of selective enforcement was at the request of this court. I think we can. Can I just, in that case, can I follow up? Because I thought your answer, my, I have a concern that this ordinance has been enjoined going forward on the grounds that people don't have notice as to what it means. But in light of this enforcement action, it certainly seems as though going forward, whatever was the case in the past, there is now, it is now very clear that mixing is not allowed. And I understood your response to that to be, no, this is not noticed because there's selective enforcement. Is that not right? I think that's a fair rebuttal to the contention that it's clear going forward. Okay. So then this does, in fact, rely on your selective enforcement claim. So perhaps we could send that back to the district court and have the district court take a look at it after there's been discovery. And if Your Honor is persuaded that that's necessary, then I think that's an appropriate direction to go. We would argue that it does not have to get to that point because it can be determined to be vague as written on its face. And therefore, that fundamental flaw prohibits consistent enforcement moving forward, just as a matter of course. And I'm out of my time, but if there's anything specific that this court would ask of me, I'd be happy to say. No, thank you. Thank you. Thank you. All right, Ms. Shearer. I think at least I would really like to know your understanding of what happened here and what this footnote means on Joint Appendix 241. What happened with the phone call? It says both parties agreed the facts of the case were undisputed. Did the city agree to that? No, Your Honor. It says we did not agree. It says both parties agreed the facts of the case were undisputed and discovery was unnecessary. On the call, both parties consented to the issuance of a final opinion. However, then you followed up with your letter. How do you take that? Okay. In the phone call, I pointed out that it was a motion to dismiss and that the court was required to accept the allegations of the complaint as true. That is not the same as saying the facts are undisputed and discovery is unnecessary. I don't know how he could take that from what we discussed in the phone call, and it ignores my letter entirely. So when it says both parties consented to the issuance of a final opinion, in your view, you consented to the issuance of a final opinion on the motion to dismiss, and he doesn't ignore your letter entirely because he mentions it the very next thing. The district court does acknowledge you then sent a letter that if the motion to dismiss was denied, which seems consistent with you understanding that the final opinion would be on the motion to dismiss because that's the only thing that was outstanding at the time, then you still want a discovery, correct? Right. Right. But I don't know how saying it's a motion to dismiss and agreeing that the court can rule on the motion to dismiss somehow transforms into undisputed facts and I can grant a cross-motion for summary judgment that was never filed by Adams Housing in the first place. But when you look at the order, it doesn't say it was a Rule 56 order. It just says he's granted clarity of a judgment. So I'm not sure it's Rule 56 of 12b6, is it? I don't know what it is, but he granted affirmative relief to a party that hadn't, you know, filed a motion on my motion to dismiss. So it just went well beyond what the rules allow and what was at issue. And when I say he ignored my letter, he obviously states that I submitted a letter, but then he ignored the content of it. Well, what I think you may have, I think Judge Lee asked you this earlier, but what, could you clarify for me what discovery you think would aid the city at this point? Oh, I think that's a decision I was going to make after the motion to dismiss was denied, as he said it would be in some respect. It says regarding the legislative history of the ordinance at issue. That's what your letter says. How would the legislative history have been? Right. For beginners, that would be it. But that's because it would stand to refute the allegations of the complaint that there was selective enforcement, inconsistent decisions, retaliatory inspections. I think Mr. Rommel repeatedly said during his argument that, like, he assumed, as did Judge Motz, that there were these inconsistent decisions. But there's absolutely no facts in the complaint to make that a plausible claim in the first place. Even if there were facts in the complaint that make it a plausible claim, it can't be accepted as proven fact in granting affirmative relief to Adams Housing. The proper procedure is for the court to accept it as true in denying my motion to dismiss. And then the case proceeds forward as is routine. So what's vague about the punctuation? One of the following colon, semicolon, semicolon, does that suggest they can be mixed? No. It precludes mixing and proves that there are three alternatives. I never thought we'd spend time thinking about punctuation at oral argument. I guess punctuation matters, huh? In statutory construction, punctuation, yes, absolutely matters. Lots of cases have looked at punctuation in order to determine what a phrase means. And so, for instance, if a comma is in a certain place, you're trying to figure out what the phrase after the comma means. But no more than two unrelated persons. Would the two brothers be unrelated? The two brothers are related. So would they count once or twice? It's not a counting process. Under 1A, you can have two or more persons who are related, okay? The presence of the third person who is not related to the two brothers means they don't fit in Group A. Group B is up to a maximum of two persons who are not so related, here and after referred to as unrelated persons, okay? So who are the two persons not so related? The two brothers. They're related. So they can't fit in Group B either because then you're allowing the mixing that's not allowed. So in addition to the fact that it says one of the following groups living as a single housekeeping unit, okay, and in addition to punctuation, you also have the definition of unrelated, which is not stated there in the judge's opinion, but the definition of unrelated persons is, quote, who are not so related, end quote. So we know that they're different. We know that they're not allowed to be mixed based on all those things. Hypothetically, I thought the statutory language, you know, it's not entirely clear. One could be confused about it. I mean, is that the end of the vagueness challenge for you, or is it okay if it's not exactly crystal clear in this context where we're talking about a commercial regulation, commercial entities who are expected to make inquiries if something is less than 100% clear? It's a civil penalty. It's not a criminal case. I mean, how high is the bar here? I would agree that it doesn't have to be. You know, when you're looking at ambiguity of statute, there has to be more than one reasonable interpretation of the term, and we would submit that Adams Housing interpretation is not reasonable based upon the language and the structure of the statute, and is therefore not ambiguous. We have a lot of law on this, right, saying that particularly in the commercial context, it's different in a civil context. If you've got a question about a statute, if it's not drafted with 100% clarity, you should ask. You should ask, and for some reason, you know, these are unsupported allegations of the complaint, again, that, well, you know, we couldn't ask because they wouldn't tell us the truth or something like that. Well, the reason they don't want to ask is they know what the answer is, and they want to exceed the two-person limit. They want to rent to more students so that they can make more money. So, I mean, it's very convenient to say you don't understand and that you couldn't ask because it wouldn't have helped. That's not true. I think it was very clear. If you don't think the statute's clear, then, yes, any inquiry would have made it clear. I think that the enforcement action, the order to reduce occupancy itself, the administrative proceedings themselves show this is what the city believes the statute means and how it should be interpreted. And so it's very clear. And then during the administrative proceedings, Adams Housing never argued that it was vague or that it violated their constitutional rights. It was only later when they went to the circuit court state level in their petition for judicial review that they, for the first time, argued that it was a violation of their constitutional rights. And so the problem there is that they did not exhaust their administrative remedies. You have to bring those constitutional claims before the administrative body. And so you have that issue. And, yes, it's a state court issue. I agree with you. But they went ahead and filed a complaint that was based on the United States Constitution, equal protection, due process, et cetera. So the city removed the statute. Okay. Your red light is on. Did that answer your question? Yes. Thank you. Thank you very much. All right. Yes. We'll step down and greet counsel and then go to the next case.
judges: Stephanie D. Thacker, Pamela A. Harris, Gerald Bruce Lee